PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PAMELA PRIDDY, ) | |
| ) | CASE NO.  4:24CV0276 |
| Plaintiff, ) | |
| ) | JUDGE BENITA Y. PEARSON |
| v. ) | |
| ) | |
| CITY OF NEWTON FALLS, *et al.*, ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | [Resolving ECF No. 16] |

Pending is Defendants City of Newton Falls ("Newton Falls"), Julie Stimpert ("Stimpert"), and Jeff Limbian's ("Limbian") (collectively "Defendants")'s Motion for Partial Dismissal (ECF No. 16) pursuant to Fed. R. Civ. P. 12(b)(1). Defendants request that the Court decline to exercise supplemental jurisdiction over Plaintiff Pamela Priddy's state-law claims and dismiss them without prejudice while retaining jurisdiction over her federal FMLA claim. Defendants also move the Court to dismiss Plaintiff's claims against Stimpert and Limbian in their personal capacity for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The Court has been advised, having reviewed the record, the parties' briefs and the applicable law. For the reasons that follow, ECF No. 16 is denied in part and granted in part. Count IV, seeking declaratory judgment against all Defendants will be dismissed, in part, as moot. The Court will exercise its broad discretion and will hear Plaintiff's other state-law claims.

(4:24CV0276)

## I. Background

Because this case is addressed at the motion-to-dismiss stage, the following allegations as set out in the Complaint (ECF No. 1) are taken as true and construed in the light most favorable to Plaintiff. *See Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 382-83 (6th Cir. 2016).

On February 13, 2024, Plaintiff filed a Complaint (ECF No. 1) against Newton Falls, Stimpert, and Limbian invoking the Court's federal question jurisdiction. Stimpert is one of five current Newton Falls City Council members. Limbian served as the Interim Newton Falls Law Director before Newton Falls City Council voted unanimously to appoint him as law director at a special meeting on January 31, 2024. Count I alleges breach of contract against Newton Falls. Count II is against all Defendants for tortious interference with a contract or business relationship. Count III alleges civil conspiracy against all Defendants to undermine and illegally breach an Amended City Manager Employment Agreement (ECF No. 1-2 at PageID #: 27-28). Count IV is against all Defendants for declaratory judgment that (1) the Amended City Manager Employment Agreement is a valid and enforceable contract, binding upon Plaintiff and Newton Falls, and (2) a January 25, 2024 state court Agreed Judgment Entry is "null and void or otherwise has no legal effect or impact" on the contractual obligations between Plaintiff and Newton Falls. *See* ECF No. 1 at PageID #: 21-22, ¶¶ 223 and 225. Count V (the only federal claim) alleges willful retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a).

2

(4:24CV0276)

Plaintiff was the Newton Falls City Manager until February 26, 2024. Newton Falls, through its City Council, initially appointed Plaintiff to be the Interim City Manager in August 2021. Newton Falls was in a serious financial condition at the time. Plaintiff held the Interim City Manager position for about 45 days without any compensation. After the 45 days went by, she continued to carry out the City Manager duties, still with no compensation. "Upon information and belief, [Plaintiff] held the City Manager position for over eight months *without any compensation* between mid-2021 and mid-2022." ECF No. 1 at PageID #: 4, ¶ 31 (emphasis in original). In May 2022, Plaintiff and Newton Falls entered into a City Manager Agreement (ECF No. 1-1) for her employment as City Manager. Under the terms of the City Manager Agreement, either party had the right to terminate the contract with 30 days written notice.

In May 2023, Plaintiff received a favorable review of her performance from a City Council committee. Proposed Ordinance 2023-36 (ECF No. 1-2 at PageID #: 26), pertaining to amending Plaintiff's employment contract, was discussed during the September 6, 2023 regular City Council meeting, at which a verbal altercation occurred between two (2) Council members. Mayor Kline chastised Mr. Baryak, one of the Council members involved in the altercation, and ordered him to leave the meeting. Ms. Spletzer, another City Council member, made a motion to overrule the Mayor's decision to expel Mr. Baryak. This motion passed 4-1, with Stimpert being the only Council member voting against it. As a result of additional disruptions to the meeting, Mr. Baryak made a motion to adjourn. According to Plaintiff, "[t]his was an *unconditional* motion for adjournment, meaning the purpose of the adjournment was to end the meeting," not

(4:24CV0276)

postpone or reschedule it. ECF No. 1 at PageID #: 5, ¶ 50 (emphasis in original). Mr. Baryak's motion passed 4-1, with Stimpert voting in favor to adjourn and end the meeting.

At the request of the Vice President and Clerk of City Council, a special Council meeting was scheduled for September 11, 2023. The scheduling of the meeting allegedly met the Village Charter notice requirements. One of the agenda items for the September 11 special meeting was proposed Ordinance 2023-36. According to Plaintiff, "[t]he September 11 special meeting was not a 'rescheduling' or continuation of the September 6 regular meeting." ECF No. 1 at PageID #: 6, ¶ 62. Mayor Kline raised an objection to the meeting, calling it an "illegal meeting" and asserting that he believed it was a "continuation" of the September 6 meeting. ECF No. 1 at PageID #: 7, ¶ 72. Mayor Kline then, unilaterally, struck his gavel, declared the meeting to be "adjourned" and left his seat. ECF No. 1 at PageID #: 7, ¶ 72. According to Plaintiff, "Mayor Kline's act was improper and specifically prohibited by Newton Falls' ordinance and the Robert's Rules of Order governing Council meetings." ECF No. 1 at PageID #: 8, ¶ 75. Council continued with the September 11 meeting after Mayor Kline exited. A motion was made and passed 3-2 to take a 15-minute break and then reconvene and continue the meeting. Stimpert was one of the "no" votes for the break. When the meeting reconvened without further objection, Mr. Baryak, the acting Council Vice President, continued the meeting in the absence of Mayor Kline. At this point, the City Council went on to consider the entire agenda for the meeting. The City Council considered five (5) separate ordinances, including proposed Ordinance 2023-36, which was voted on and adopted as a "first reading." ECF No. 1 at PageID #: 8, ¶ 86.

(4:24CV0276)

On October 6, 2023, the City Council held another regular meeting. One of the items on the agenda was the second reading of proposed Ordinance 2023-36. A copy of the proposed Amended City Manager Employment Agreement was attached to the proposed ordinance. City Council voted on and approved Ordinance 2023-36 via a second (final) reading. Ordinance 2023-36 passed by a 3-2 vote, with Stimpert voting "no." ECF No. 1 at PageID #: 9, ¶ 93. "Upon information and belief, Stimpert has a personal vendetta against [Plaintiff] because [Plaintiff] was involved in the prior decision to cut Stimpert's husband's position, zoning administrator, down to a part-time position for budgetary reasons." ECF No. 1 at PageID #: 9, ¶ 97. On October 6, 2023, Acting Mayor John Baryak, as well as Clerk of Council Michael Acomb and Law Director Brad Bryan all signed Ordinance 2023-36, indicating it was "PASSED IN COUNCIL THIS __6__ DAY OF __OCT__, 2023." ECF No. 1-2 at PageID #: 26. Plaintiff and Newton Falls, by and through Acting Mayor Baryak, entered into an employment agreement on October 9, 2023 by signing the Amended City Manager Employment Agreement. Under the terms of the contract, Plaintiff was now on a term of employment from October 20, 2023 through October 19, 2027; and either party had the right to terminate the agreement, with 60 days written notice. If Newton Falls elected to terminate the agreement prior to its expiration date, "the City Manager shall be entitled to a minimum severance payment equal to the total amount due for the remaining months left on this contract through October 19, 2027, unless the City Manager materially breaches this contract by the commission of misfeasance, malfeasance, or nonfeasance in office or being convicted of a felony." ECF No. 1-2 at PageID #: 27, § 2.

(4:24CV0276)

On October 18, 2023, the City Council held another regular meeting. Council voted to adopt and approve the minutes from the September 11 special meeting. The vote passed 4-1, with Stimpert voting "yes" to approve the minutes. Stimpert neither voiced nor recorded any further opposition to the validity of the September 11 meeting, including the first reading of Ordinance 2023-36. In addition, Stimpert neither voiced nor recorded any opposition to the validity of the October 6 meeting, including the second (final) reading and adoption of Ordinance 2023-36.

On November 1, 2023, the City Council held another regular meeting, at which Stimpert again voted "yes" and approved the meeting minutes for the October 6 meeting.

Thirty-four (34) days after Ordinance 2023-36 was approved by the City Council and signed into law, Stimpert, in her official capacity, filed a single-plaintiff lawsuit against Newton Falls that did not name Pamela Priddy as a party defendant. *See Stimpert v. Village of Newton Falls*, No. 2023 CV 01676 (Trumbull Cnty. Common Pleas filed Nov. 9, 2023) ("the state court action").[1] Stimpert is represented by Attorney Sarah Thomas Kovoor in the state case, which sought a declaratory judgment that Ordinance 2023-36 was "invalid and of no force or effect" because the September 11 meeting was invalid or otherwise an improper continuation of the September 6 meeting. *See* Open Meetings Act as found in Ohio Rev. Code § 121.22 (the "Sunshine Law"). According to Plaintiff: (1) "Stimpert's lawsuit was an attempt to collude with

---

[1] A court may take judicial notice of facts contained in state court documents, including a state court docket sheet. *See Great Am. Ins. Co. v. GeoStar Corp.*, No. 09-12488-BC, 2010 WL 845953, at *19 (E.D. Mich. March 5, 2010) (citing Fed. R. Evid. 201(b)(2)).

6

(4:24CV0276)

other members of Newton Falls' governing body in an attempt to undermine [Plaintiff's] Amended City Manager Agreement;" (2) "In an attempt to try to avoid having to compensate [Plaintiff] under the terms of the Amended City Manager Agreement, Stimpert, instead, filed a lawsuit attempting to attack the validity of the September 11 meeting – the meeting where Ordinance 2023-36 passed its first reading;" and (3) "Stimpert avoided naming [Plaintiff] in the lawsuit as part of a scheme to collude with the newly appointed Law Director to agree to the result she was seeking by bringing the action." ECF No. 1 at PageID #: 12-14, ¶¶ 127; 130; 141. On January 23, 2024, Interim Law Director Limbian allegedly entered into an agreement with Stimpert to sign an Agreed Judgment Entry to file in the state court action. As part of the Agreed Judgment Entry filed on January 25, 2024, Limbian agreed with Stimpert that (1) the September 11 meeting was "invalid" or otherwise an improper continuation of the September 6 meeting and (2) the Amended City Manager Employment Agreement "is void and held for naught."

On January 25, 2024, the City Council held a special meeting, at which the main issue on the agenda was to effectively move to terminate Plaintiff as the City Manager by utilizing the Agreed Judgment Entry filed in the state court action. Stimpert and Limbian used the Agreed Judgment Entry as their foundation to assert that the Amended City Manager Employment Agreement was not binding on Newton Falls and thus, they could terminate Plaintiff without breaching her employment contract. Newton Falls's Council voted and approved Plaintiff's termination, using the terms of the City Manager Agreement (ECF No. 1-1), meaning Plaintiff was given 30 days written notice of termination. Plaintiff was put on administrative leave and then summarily terminated, effective February 26, 2024. *See* Termination Letter (ECF No. 19-2).

(4:24CV0276)

Due to Newton Falls's alleged breach, Plaintiff asserts it owes her "no less than the full amount of her compensation under the Amended City Manager Agreement ($360,000) minus any wage compensation she has received between October 20, 2023 and present." ECF No. 1 at PageID #: 16, ¶ 173.

Pamela Priddy was subsequently allowed to intervene in the state court action and filed a Motion to Vacate the January 23, 2024 Agreed Judgment Entry. Priddy is represented by the same counsel in both the case at bar and the state court action.

Prior to Plaintiff's termination, on or about December 29, 2023, she requested and applied for FMLA leave due to one or more serious health conditions requiring surgery. At the time of her request, Plaintiff allegedly was legally eligible for FMLA leave based on meeting her hours requirements and having a serious health condition. Newton Falls, by and through Limbian, denied Plaintiff's request. Limbian's documented excuse for denying Plaintiff's FMLA request was because he felt she "is not entitled to FMLA as I read the applicable law."[2] ECF No. 1 at PageID #: 17, ¶¶ 174-80; PageID #: 22-23, ¶¶ 231-39.

Two (2) days after Defendants filed their Reply Brief (ECF No. 20) regarding the within motion in the case at bar, Priddy filed in the state court action a Notice of Withdrawal of Rule 60

---

[2] *See* Emails (ECF No. 19-1). A court is not precluded from considering matters outside the pleadings without converting to a Rule 56 motion if the documents are "referred to in the complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Given Plaintiff's references to them in the Complaint (ECF No. 1) and the lack of opposition from Defendants, the Court will consider the Emails and Termination Letter attached to Plaintiff's Brief in Opposition (ECF No. 19).

8

(4:24CV0276)

Motion to Vacate and Notice of Non-opposition to Joint Motion to Reconsider Intervention. On June 20, 2023, all claims of Priddy in the state court action were dismissed with prejudice.

## II. Analysis

In general, federal courts have original jurisdiction over a case if it arises under federal law or if the parties are diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331 and 1332. Defendants do not dispute that the Court has original federal question jurisdiction over Plaintiff's FMLA retaliation claim. *See* Memorandum in Support (ECF No. 16) at PageID #: 111. If a court has original jurisdiction over one claim, the court can exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "Claims form part of the same case or controversy when they derive from a common nucleus of operative facts." *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002) (internal quotation marks and citation omitted). There is no dispute that the five (5) claims in the case at bar relate to the same event: Plaintiff's termination from her employment as City Manager with Newton Falls.

"The decision to exercise supplemental jurisdiction 'is committed to the district court's discretion and is not mandatory.' " *Filing v. Phipps*, No. 5:07CV1712, 2008 WL 11380153, at *4 (N.D. Ohio Oct. 17, 2008) (quoting *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 n.2 (6th Cir. 1978)); *see also Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) ("Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right.").

9

(4:24CV0276)

"[E]ven if a district court has supplemental jurisdiction under § 1367(a), § 1367(c) makes clear that it need not exercise that jurisdiction in certain circumstances." *Filing*, 2008 WL 11380153, at *4. Specifically, § 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In addition to considering the circumstances enumerated in § 1367(c), "courts should treat the state law claims 'in the manner that best serves the principles of [judicial] economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.' " *Filing*, 2008 WL 11380153, at *5 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)).

**A.**

The issue is whether the Court may exercise supplemental jurisdiction under § 1367(a) over Plaintiff's additional four state-law counts and, if so, whether there are countervailing factors under § 1367(c) that militate against exercising such jurisdiction. For the reasons that follow, the Court finds that (1) it has supplemental jurisdiction under § 1367(a) and (2) the facts that would support each of Plaintiff's state-law claims arise out of a common nucleus of operative facts about the termination of her employment.

(4:24CV0276)

**1.**

Under the circumstances present in this case and because the Court has original jurisdiction over Plaintiff's FMLA retaliation claim (Count V), exercising supplemental jurisdiction is more efficient than dismissing Counts I through IV for jurisdictional reasons. *See Sholtz v. Emergency Med. Transp., Inc.*, No. 5:20CV2328, 2021 WL 964128, at *4-5 (N.D. Ohio March 15, 2021) (retaining and exercising supplemental jurisdiction over state-law counterclaims, and denying plaintiff's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) when all claims arose out of the parties' "relationship as employer and employee"); *see also Surprise v. GTE Serv. Corp.*, 47 F. Supp.2d 240, 243 (D. Conn. 1999) ("Although these claims are grounded on separate legal theories of liability, they all arise out of an 'interlocking series of transactions' related to Plaintiffs' termination . . . and thus 'substantially derive from the same facts.' "); *Gard v. Teletronics Pacing Sys., Inc.*, 859 F.Supp. 1349, 1353 (D. Colo. 1994) (denying motion to dismiss six of seven state-law claims for lack of supplemental jurisdiction). Count IV, however, will be dismissed, in part, as moot because all claims of Plaintiff in the state court action, including that the January 23, 2024 Agreed Judgment Entry be vacated, have been dismissed with prejudice. *See* ECF No. 1 at PageID #: 22, ¶ 225. Plaintiff's request for a declaratory judgment "that the Amended City Manager Agreement is a valid and enforceable contract, binding upon [her] and Newton Falls" will remain pending. *See* ECF No. 1 at PageID #: 21, ¶ 223.

(4:24CV0276)

**2.**

Even when a district court may exercise supplemental jurisdiction over state-law claims, it still may decline to do so pursuant to 28 U.S.C. § 1367(c). In weighing the § 1367(c) factors, the Court finds that none of the factors apply to bar supplemental jurisdiction. *See LaSorella v. Penrose St. Francis Healthcare Sys.*, 818 F.Supp. 1413, 1416 (D. Colo.1993) (state-law claims of promissory estoppel/breach of contract and federal ADEA claim arise from common facts; § 1367(c)(1) did not apply when the non-federal claims implicated a "plethora of established state law"). Breach of contract law is far from "novel" or otherwise "complex" in any way, *see Sholtz*, 2021 WL 964128, at * (N.D. Ohio March 15, 2021), nor are claims related to tortious interference (Count II), civil conspiracy (Count III) or declaratory judgment (Count IV).

"State-law claims do not predominate when the adjudication of those claims will likely require the same witnesses, evidence, and determination of the same or similar facts as the adjudication of the federal claims." *Bruso v. Cnty. of Montgomery, Tenn.*, No. 3:10-cv-0954, 2011 WL 3021526, at *5 (M.D. Tenn. July 21, 2011) (citing *Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*, 912 F.Supp. 1549, 1565-66 (S.D. Fla. 1996)). It is the same set of alleged actions in the case at bar – Plaintiff's termination from her employment as City Manager with Newton Falls – that gives rise to the harms forming the basis of Plaintiff's state and federal claims against Defendants. Although adjudicating each claim will of course involve addressing legal issues that differ, the ascertainment of the material facts for each of the claims, both state and federal, will mostly involve weighing common evidence. In terms of judicial economy, it would be wasteful for those common issues to be adjudicated in both state and federal court. The goal of preserving

12

(4:24CV0276)

time and resources by trying the federal and state-law claims together outweighs whatever additional resources might be devoted to resolving the issues of established state law that are distinct from those of the federal FMLA claim.  *Id.* at *6; *see also Surprise*, 47 F. Supp.2d at 243-44 (holding the state law claims did not "predominate" when the resolution of the federal claim was not dependent upon the outcome of the state law claims).

Finally, Defendants argue there are compelling reasons for the Court to decline to exercise supplemental jurisdiction.  First, Plaintiff is already litigating some of her claims in the state court action.  Second, this Court is not the proper venue to overturn a state court decision, *i.e.*, the January 25, 2024 state court Agreed Judgment Entry.  As stated above, however, all of Plaintiff's claims in the state court action were dismissed with prejudice on June 20, 2023.

**B.**

Defendants argue Plaintiff has failed to plead with specificity her claim for personal liability against Stimpert and Limbian.  The Court finds Plaintiff has sufficiently pled, under Fed. R. Civ. P. 8, allegations against Stimpert and Limbian, in both their official and personal capacities.  For purposes of the tortious interference claim, Plaintiff alternatively pled that Stimpert and Limbian acted in their official capacities *or* Stimpert acted in her personal capacity related to the allegations comprising Count II.  *See* ECF No. 1 at PageID #: 19, ¶¶ 199-203 (Count II).  For purposes of the civil conspiracy claim, Plaintiff pled that Stimpert and Limbian acted in their official capacities or, in the alternative, their personal capacities related to the allegations comprising Count III.  *See* ECF No. 1 at PageID #: 20-21, ¶¶ 213-18.  Given the procedural posture of the case at bar, the Court believes the efficient and appropriate way

13

(4:24CV0276)

forward is to permit discovery to occur and consider the parties' arguments on summary judgment, not earlier at the motion-to-dismiss phase of the litigation. Proceeding in this manner will ensure the Court reviews these arguments only after appropriate discovery has been completed and will make certain that the Court's consideration of the parties' arguments is not premature.

### III. Conclusion

Accordingly, Defendants' Motion for Partial Dismissal (ECF No. 16) is denied in part and granted in part. Count IV, seeking declaratory judgment against all Defendants, is dismissed, in part, as moot because all claims of Plaintiff in the state court action, including that the January 23, 2024 Agreed Judgment Entry be vacated, have been dismissed with prejudice. All other claims remain pending.

Counsel are reminded that this case is set for a Telephonic Status Conference on July 17, 2024, at 12:00 p.m. Noon. *See* Case Management Plan (ECF No. 17) at PageID #: 203, ¶ 16.

IT IS SO ORDERED.

| | |
|---|---|
| July 16, 2024 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |